UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| CHARLES M. TILLER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | No. 1:14-cv-00518-TAB-TWP |
| ) | |
| CAROLYN  COLVIN, ) | |
| ) | |
| Defendant. ) | |

**ORDER ON JUNE 16, 2015, ORAL ARGUMENT**

The parties appeared by counsel June 16, 2015, for an oral argument on Plaintiff's appeal of his denial of disability benefits.  Set forth below is the Court's oral ruling from the bench following that argument.  This ruling affirms the decision of the Commissioner, and denies the Plaintiff's claim for disability benefits.

Plaintiff Charles M. Tiller presents three issues on appeal:  (1) whether the ALJ erroneously concluded at step 5 that there was no conflict between the vocational expert's testimony and the Dictionary of Occupational Titles; (2) whether the ALJ erred in his credibility analysis of Tiller; and (3), whether the ALJ violated due process in development of a full and fair record at the hearing when informing Tiller's counsel of the ALJ's time schedule.

Tiller appeals from the ALJ's November 9, 2012, decision.  At step 1, the ALJ determined that Tiller had not engaged in substantial gainful activity since the alleged onset date. At step 2, the ALJ found Tiller had the following severe impairments:  osteoarthritis of the right knee, degenerative disk disease of the cervical spine, and migraines.  At step 3, the ALJ determined that Tiller did not have an impairment or combination of impairments that met or

medically equaled the severity of one of the listed impairments. At step 4, the ALJ found that Tiller was capable of performing sedentary work, with certain restrictions set forth at page 19 of the decision.

Based on this RFC and the VE's testimony, the ALJ found that Tiller was not capable of performing any past relevant work. Relying on the VE's testimony, the ALJ concluded at step 5 that Tiller could work as a cashier, as an office clerk or as an inspector. The ALJ determined that Tiller was not disabled. The Appeals Council denied Tiller's request for review, and this appeal followed. In considering this appeal, the Court must uphold the ALJ's decision if substantial evidence supports his findings, *Blakes v. Barnhart*, 331 F.3d 565, 568 (7th Cir. 2003).

As to the first issue, Tiller argues that the ALJ erred at step 5 by failing to resolve an alleged conflict between the adopted RFC and the information listed in the DOT for the three occupations Tiller was found capable of performing. According to Tiller, the ALJ's finding that Tiller could not perform overhead reaching or lifting contradicts the jobs that the ALJ found Tiller capable of performing in the national economy.

The ALJ concluded that Tiller could work as a cashier, office clerk or inspector. Because these jobs all require frequent reaching, Tiller argues they directly conflict with his inability to overhead reach. In support of this argument, Tiller cites to *Prochaska v. Barnhart*, 454 F.3d 731 (7th Cir. 2006). However, Tiller misstates *Prochaska's* holding, as plaintiff's counsel conceded at oral argument.

In *Prochaska*, the Court remanded because the ALJ did not ask the vocational expert if his testimony conflicted with the Department of Occupational Titles. *Id*. at 735. Unlike *Prochaska*, the ALJ in Tiller's case confirmed with the vocational expert that his testimony was

2

consistent with the DOT.  Indeed, the ALJ asked the vocational expert, "Is this testimony consistent with the DOT?," to which the VE responded, "Yes, Your Honor."  (R. 78.)

Tiller also argues that regardless of whether the VE's testimony complied with the DOT, the ALJ had an affirmative duty to address discrepancies and elicit an explanation for the alleged conflict between overhead reaching and the reaching requirement associated with work as a cashier or office clerk or inspector.

Pursuant to *Overman v. Astrue*, 546 F.3rd 456, 463 (7th Cir. 2008), the ALJ need only resolve a conflict as apparent and "obvious enough that the ALJ should have picked up on it without any assistance."  An inability to perform overhead reaching does not necessarily preclude someone from performing a job that requires frequent reaching.  In my view, it goes too far to say that any potential conflict should have been obvious or apparent to the ALJ.  As the Commissioner noted in oral argument, the ALJ can't have knowledge of all the jobs in the DOT. That's why the ALJ relies on experts.  Moreover, plaintiff was represented by counsel at the hearing, and counsel did not raise any possible reaching conflicts at the hearing or bring this issue to the ALJ's attention.  (R. 78.)

In short, the ALJ complied with his duty to confirm that the VE's testimony did not conflict with the DOT pursuant to Social Security Ruling 00-4p; and the alleged conflict was not so obvious as to require the ALJ to elicit an explanation for the conflict.  Therefore, remand is not warranted on this issue.

Tiller next argues that the ALJ used inappropriate boilerplate language in explaining his credibility analysis.  It is true that the ALJ's credibility determination included some boilerplate language, but this is not reversible error so long as the ALJ provided detailed explanations as to his credibility analysis.

Although the ALJ's credibility analysis is far from perfect, the ALJ weighed the requisite factors listed under Social Security Ruling 96-7p.  Tiller's strongest argument is that the ALJ's characterization of daily living activities contradicts Tiller's testimony.  Tiller specifically takes issue with the ALJ's finding that, "The claimant is able to cook, clean and shop for himself, has no problems with personal care, and is able to function independently and take care of his own basic needs."  (R. 23.)

I agree with Tiller that the ALJ did not accurately describe all of Tiller's activities of daily living and that the ALJ overstated Tiller's abilities in this regard.  Even the Commissioner acknowledged at oral argument that this description was not ideal.  Any error, however, is not a basis for remand because the ALJ acknowledged plaintiff's testimony that his daily activities were "fairly limited," and Tiller's daily activities were one of many factors considered in the ALJ's credibility determination.

Indeed, the ALJ provided a rather extensive discussion of these factors set forth in the record at pages 22–24.  The ALJ considered the location, duration, frequency and intensity of Tiller's symptoms as unpersuasive, as Tiller's allegation of debilitating knee pain contradicted Dr. Paul Boyce's testimony that there was no instability in Tiller's knee; and Tiller inconsistently used his cane.  (R. 23, 71.)  The ALJ discussed the type, dosage, effectiveness, and side effects of Tiller's medication, noting Tiller's abuse of prescriptions and positive drug tests for cannabinoids, opiates, benzodiazepine, and tricyclic, which violated his pain relief treatment plan.  The ALJ considered Tiller's self-reports of drowsiness but noted he did not report side effects like this to his doctors.  Moreover, the ALJ considered Tiller's treatment history.  Thus, any errors in the ALJ's characterization of Tiller's daily living activities is not a basis for remand in my view.

Tiller also argues that the ALJ improperly relied upon a single March 2011 report in the record to conclude that Tiller inconsistently used his cane. Tiller points to a doctor visit from two weeks earlier where he reportedly used his cane. He also cited to his own testimony that indicates he had only stopped using the cane for a three-week period because he didn't want to look crippled.

However, the ALJ's conclusion that Tiller inconsistently used his cane was part of a larger discussion of Tiller's treatment history. In discussing Tiller's treatment history, the ALJ also considered Tiller's untruthfulness regarding his prescription drug use, the effects of the medication, alternative treatments and his lack of physical therapy attendance. Thus, even if the ALJ placed too much emphasis on Tiller's March 2011 exam, the ALJ's overall discussion of Tiller's treatment history is not patently wrong; and the fact that plaintiff was not using his cane for at least three weeks while claiming he had debilitating knee pain further supports the ALJ's questioning of Tiller's credibility. More important, the ALJ still accommodated for Tiller's need to use a cane in his RFC determination, despite faulting Tiller for his inconsistent cane use. (R. 19.) Therefore, the ALJ's credibility analysis is not reversible error.

Finally, Tiller alleges that the ALJ violated his due process at the hearing. During the hearing, the ALJ said to plaintiff's counsel, "Okay. What else do you want to ask him? Bear in mind that I have a meeting to attend at two; and if we can't get through this hearing and the next hearing at two, I will cancel the next hearing." (R. 68.) Tiller's counsel replied, "Okay, I will try to move as quickly as I can. Thank you, Your Honor, for that indication."

Tiller argues that his counsel was prevented from asking all of her questions at the hearing because of the ALJ's time constraint. Plaintiff's counsel reads too much into this brief exchange. Plaintiff contends it was some type of threat that barred plaintiff's counsel from fully

presenting a case. However, Tiller's counsel's response to the ALJ at the hearing, which I have just set forth, undermines that assertion.

Moreover, a review of the transcript reveals Tiller's counsel was given an opportunity to continue asking questions during her client's testimony. She was also given an opportunity to ask any remaining questions she might have had after she finished questioning the vocational expert. The following exchange is illuminating.

> Attorney: "Those are my questions. Thank you."
>
> ALJ: "Okay. I don't have any other questions to ask anybody. Unless there's further testimony, I'm going to adjourn the hearing. Is there anything further before I do?"
>
> Attorney: "No, thank you."
>
> ALJ: "That's all the testimony for today. I'm going to adjourn the hearing, the time being approximately 1:17 p.m. I thank you all for being present. Good day. The hearing is over." (R. 78–79.)

Even after being given two opportunities to question Tiller, the hearing adjourned at 1:17 p.m., leaving additional time counsel could have used to ask questions and did not. No due process was violated. Time limits without more do not equal a due process violation.

I also reject Tiller's argument that the ALJ failed in his own capacity to develop a full and fair record by not questioning Tiller on certain aspects of the case at the hearing. Specifically, Tiller focuses on the ALJ's failure to inquire about Tiller's migraines. Although the ALJ had only a brief exchange with Tiller about his migraines at the hearing, the ALJ's decision adequately addressed Tiller's migraines. The ALJ determined that Tiller's migraines were a severe impairment and that his smoking exacerbated his migraine symptoms. (R. 16, 19–24.)

6

The ALJ noted Tiller complained of migraines during doctor visits and that trigger point injections increased his migraines. (R. 21–23.)  The ALJ discussed Tiller's migraine prescription, referring to doctor visits from June and September of 2011 where Tiller reported his migraine medications were working. (R. 645, 656.)  Thus, remand is not appropriate on the issue of due process.

      For these reasons, Tiller's motion in support of appeal should be denied, and the Commissioner's decision is affirmed.

      Dated: 7/6/2015

_____
Tim A. Baker
United States Magistrate Judge
Southern District of Indiana

Distribution:

Lindsey M. Stout
HENSLEY LEGAL GROUP, PC
lstout@hensleylegal.com

Luke F. Woltering
SOCIAL SECURITY ADMINISTRATION
luke.woltering@ssa.gov

Thomas E. Kieper
UNITED STATES ATTORNEY'S OFFICE
tom.kieper@usdoj.gov